(80 South. 539)

No. 23082.

RAPON v. PAYS.

(Jan. 6, 1919.)

*(Syllabus by the Court.)*

LANDLORD AND TENANT ⚖=168(1)—INJURY TO
TENANT—ASSUMPTION OF RISK.

Where one, assuming the character of tenant, without the consent of the owner, enters upon premises which are unfit for occupancy and undergoing repairs, including the repairing of plaster upon walls and ceilings saturated and loosened by stormwater, he assumes the risks incidental to such repairs, and, among them, the risk of falling plaster.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Pauline Rapon, wife of Amedee Landreaux, against Mrs. Widow Jean Marie Pays. Judgment for defendant, and plaintiff appeals. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellant.

Frank T. Echezabal, of New Orleans, for appellee.

MONROE, C. J. Plaintiff prosecutes this appeal from a judgment rejecting her demand for damages for personal injuries alleged to have been sustained by the falling of plaster in a house of which she was the occupant and alleged tenant.

Though there are conflicts in the testimony, and particularly in that given by plaintiff and her husband, we are satisfied that the facts out of which this suit has arisen are substantially as follows:

Just prior to November 15, 1915, plaintiff and her husband were in urgent need of a house to live in, as their lease of the house that they were occupying was to expire on that day. Defendant owned a double tenement cottage having four rooms and a kitchen on each side, for which, when rented to paying tenants, she received $13 and $14, per month, respectively. In the fall of 1915, New Orleans was visited by one of the most violent and destructive storms in its history, and so many houses were made roofless, or partly so, that it was difficult for a while to find workmen to repair them, and such was the condition of the tenement here in question; that is to say, the roof had been badly damaged, the rain had poured in and saturated the plaster, the plaster had fallen, and everything was in such disorder as to render the house uninhabitable, and it was after the roof had been repaired, but had not yet been tested, and the inside repairs were in progress, that plaintiff's husband made repeated application to rent it, both to defendant and to her agent, and was told repeatedly by both of them that the tenement was not in a condition to be rented. On a particular day, however (the exact date not being quite fixed), while defendant's son was engaged in painting the kitchen, plaintiff and her husband began moving in, whereupon the son telephoned to his mother, and she at once repaired to the place, and, not finding plaintiff's husband, who was a police officer, said to plaintiff, "Do not move any more furniture into this house, for it is not to be rented; it is not fit," meaning, as she states, that "the kalsomine was all down, and, from being wet, it was all loose and it was dangerous"; that, "in fact, the only room that the people could have lived in was the front room." Defendant called the next day on the same errand, and, failing a second time to find plaintiff's husband, dropped the matter, and plaintiff and her husband remained in the house. In the meanwhile the repairs were being made, as defendant could get men to do the work, and on December 26th a plasterer had been engaged in putting a patch near one corner of the ceiling of the third room, across which corner of the room there stood an armoir. On the following morning (according to her testimony), as

plaintiff was getting something out of the armoir, some of the plaster fell from the ceiling, and inflicted the injury of which she complains, and from which she testifies that she had not recovered when the suit was tried, more than two years later. The plasterer testifies that it was not the plaster or cement which he had put on, but old plaster, further in the corner, that had fallen, and that it could not have fallen in front of the armoir, but from its position in the ceiling must have fallen behind the armoir, or, at best, on top of it; and he produces a piece of plaster which he says he afterwards took from that room, and which is about a quarter of an inch thick. Plaintiff testifies that she was knocked senseless, and so remained for half an hour. A physician was called and found her in bed; he examined her thoroughly and found nothing broken; merely contusion without abrasion, on the left side of the forehead and left shoulder. He says that there was "a little swelling on the head," but not a lump; that it subsided under external applications of lead water and laudanum, but that plaintiff was highly nervous, and that he advised her to consult a nerve specialist. She then consulted her "association" doctor, who found some remains of the swelling and gave her the same advice; i. e., to attend a free clinic and have an X-ray picture taken of the swelling, or place where the swelling had been. He was asked, "Q. Was the lump or mass on the left side of her forehead caused by any constitutional ailment that she had?" to which he replied, "Well, possibly, most possibly." The result of her treatment at the clinic, if she attended it, is not shown, but it is shown that she had been in bad health for eight or nine years prior to the accident. She is the only person who was present at the moment of the accident, and about the only one who was capable of testifying as to its real effect upon her; and she is contradicted in so many of her statements, either by her husband, called in her behalf, or by the defendant and her witnesses, that we are compelled to accept her testimony with some reserve, and, being of opinion that she and her husband entered upon defendant's premises against the latter's expressed wishes, at a time when they were obviously unfit for occupancy and undergoing repairs, we conclude that in so doing they assumed the risks incidental to such repairs, one of which was that the damaged plaster, the repairing of which defendant had been afforded no opportunity to inspect or accept, might fall upon their heads.

Judgment affirmed.

DAWKINS, J., takes no part.